IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| J & J Sports Productions, Inc., ) | |
| ) | Civil Action No. 0:11-2436-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| Chef Tejano, LLC, d/b/a Sammy's Bar and ) | |
| Grill, and Samuel Cantu, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

On September 12, 2011, J & J Sports Productions, Inc., ("Plaintiff") filed an action in this court against Chef Tejano, LLC, ("Chef Tejano") and Samuel Cantu ("Cantu") (collectively "Defendants"). Plaintiff alleges that it owned the exclusive television distribution rights for a boxing match, and that Defendants exhibited the fight at a commercial establishment without paying a licensing fee to Plaintiff. Plaintiff has asserted claims under the Communications Act, 47 U.S.C. § 605, and the Cable Communications Policy Act, 47 U.S.C. § 553, as well as a state law claim for conversion. Neither Defendant filed an answer or otherwise responded to Plaintiff's complaint. On March 27, 2012, in response to Plaintiff's request, the clerk entered default as to both Defendants. On March 28, 2012, Plaintiff filed a motion for default judgment.

## FACTS

The following facts are alleged in Plaintiff's complaint and, due to Defendants' default, are accepted as true. Chef Tejano is a South Carolina limited liability company doing business as Sammy's Bar & Grill in Rock Hill, South Carolina. Cantu is a South Carolina citizen and the owner, member, principal, alter ego, manager, agent, and/or representative of Chef Tejano.

1

Cantu has dominion, control, oversight, and management authority over the Sammy's Bar & Grill establishment. Plaintiff purchased the exclusive television distribution rights to "Number One: Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight" (the "Program"), which took place on September 19, 2009. Cantu and Chef Tejano, or their agents, exhibited this program at the time of its transmission with full knowledge that unauthorized interception was unlawful. This interception was done willfully and for the purposes of commercial advantage or financial gain. Cantu was present during this conduct and/or authorized or controlled this conduct.

The following facts are set out in a sworn affidavit by private investigator Lisa Dalton. *See* ECF No. 22-4. Dalton went to Sammy's Bar & Grill on September 19, 2009 and observed that the Championship Fight was being shown on 22 televisions. ECF No. 22-4. She states that the approximate capacity of Sammy's Bar & Grill is 125 customers, and that she observed approximately 80 to 100 customers present. According to a sworn affidavit by Plaintiff's president, Joseph Gagliardi, based on a capacity of between 101 and 200 persons, it would have cost $2800 for Chef Tejano to purchase the rights to exhibit the Program at Sammy's Bar & Grill. ECF No. 22-3 at 3 & 9.

## DISCUSSION

**A.     Liability**

Under 47 U.S.C. § 605(a), "no person receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney." Any person

aggrieved by such a violation may bring a civil action to obtain an injunction and to recover damages, costs, and attorney fees. 47 U.S.C. § 605(e)(3). The aggrieved party may recover actual damages or statutory damages between $1,000 and $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i). Furthermore, if the court finds that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court may increase the damages by an amount not more than $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii).

Under 47 U.S.C. § 553(a)(1), "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Any person aggrieved by such a violation may bring a civil action to obtain an injunction and to recover damages, costs, and attorney fees. 47 U.S.C. § 553(c). The aggrieved party may recover actual damages or statutory damages between $250 and $10,000 for all violations involved in the action. 47 U.S.C. § 553(c)(3)(A). Furthermore, if the court finds that "the violation was committed willfully and for purposes of commercial advantage or private financial gain," the court may increase the damages by an amount not more than $50,000. 47 U.S.C. § 553(c)(3)(B).

The Seventh Circuit has held that § 605 and § 553 employ mutually exclusive categories, specifically that a "communications service offered over a cable system" is not a "radio communication." *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996). In other words, a person who steals cable services at the point of delivery is liable only under § 553, even if the signals were transmitted by radio at some earlier point. On the other hand, the Second Circuit

has disagreed and held that some cable transmissions may also constitute "radio communications" under § 605.  *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996).  The Fourth Circuit has not considered the question.  Consistent with other courts in the District of South Carolina, this court finds that the reasoning of *Norris* is more persuasive. *See Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp. 124 (D.S.C. 1996).

As a result, Defendants are liable under § 605 only if they exhibited radio or satellite communications without authorization and liable under § 553 only if they received cable communications without authorization.  Plaintiff has alleged that the Program was received and exhibited without authorization.  However, Plaintiff notes that the Program could have been received through various media, including radio, satellite, and cable, and that there is no way to determine how Defendants received the Program without the benefit of discovery.  For this reason, Plaintiff requests to proceed under § 605, which authorizes higher damages.  The court finds this to be a reasonable solution.  The court finds that Chef Tejano and Cantu violated 47 U.S.C. § 605 by exhibiting interstate radio communications without authorization to customers at a commercial establishment.  Furthermore, based on Plaintiff's well-pleaded allegations, the court finds that the violation was committed willfully and for the purposes of commercial advantage or financial gain.

Plaintiff also seeks damages based on a tort theory of conversion.  However, recovery under both § 605 and the tort of conversion would result in an impermissible double recovery for the same loss.  *See, e.g., J & J Sports Prod., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*, 2010 WL 1838432 at *2 (D.S.C. Apr. 5, 2010).  Because Plaintiff has indicated its choice to proceed

4

under § 605 and to not pursue the conversion claim, the court will address damages only under § 605.

**B.     Damages**

Rather than attempt to prove actual damages, Plaintiff elects to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff seeks an award of $10,000, the maximum authorized amount. As explained above, it would have cost $2,800 for Defendants to purchase the rights to exhibit the Program at Sammy's Bar & Grill. The court finds that an award of $2,800 fairly approximates the actual harm to Plaintiff resulting from Defendants' unauthorized exhibition of the Program.

Plaintiff also seeks enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) because Defendants' violation was committed willfully and for the purposes of commercial advantage or financial gain. Plaintiff requests $100,000, the maximum authorized amount. Plaintiff argues that it loses much revenue due to unauthorized commercial exhibition of its boxing programs because legitimate bars and restaurants cannot afford to compete with "pirate" bars and restaurants. Plaintiff explains that due to the significant costs of purchasing its programs, legitimate bars and restaurant typically must charge a cover fee or otherwise raise food and drink prices when they are showing the programs. Plaintiff argues that pirate bars and restaurants gain a competitive advantage because they are able to show the programs without charging cover fees or raising prices. Plaintiff further contends that requiring the violator to pay only what it would have cost to license the program originally does nothing to deter such violations, particularly when there is a chance of avoiding detection.

The court agrees that an enhanced award is necessary to deter the willful piracy of Plaintiff's programs.  In this case, Defendants unlawfully exhibited the Program on twenty-two television screens to nearly one hundred customers.  It is not hard to believe that piracy on such a scale could provide Defendants with an unfair competitive advantage and harm Plaintiff by making it less likely that Defendants' competitors will purchase its programs.  The court finds that enhanced damages in the amount of four times the basic statutory damages, or $11,200, provides just and adequate deterrence for such willful violations.  Accordingly, the court awards total damages in the amount of $14,000.

**C.     Costs and Attorney Fees**

The court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  Because Plaintiff is an aggrieved party that has prevailed, it is entitled to recover costs and attorney fees.  Plaintiff submitted affidavits of its South Carolina counsel and its California counsel in support of its request for costs and attorney fees.  ECF No. 22-6; ECF No. 22-7.  The court grants costs to Plaintiff in the amount of $1,366.78, including filing fees, investigative services, and process service costs.

In this default matter, no one has appeared to challenge the attorney fees Plaintiff seeks.  Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates, the court must consider the following factors:  (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7)

the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney fees awarded in similar cases. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978). Although the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Servo News Co.,* 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

The information Plaintiff provided, coupled with the court's knowledge of rates in work of this type in this district, supports attorney fees in the amount of $2,245.00. Based on the information and supporting documents before the court at this time, the court concludes that the judgment against Defendants should include an award of costs and attorney fees in the amount of $3,611.78 ($1,366.78 costs plus $2,245.00 attorney fees).

## **CONCLUSION**

Plaintiff's motion for default judgment is granted. The court finds that Defendants willfully violated 47 U.S.C. § 605. Judgment in favor of Plaintiff is entered against Defendants, jointly and severally, in the amount of $17,611.78, comprising $14,000 in damages and $3,611.78 in costs and attorney fees.

**IT IS ORDERED.**

 s/ Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
January 29, 2013